Denisse O. Gastélum, SBN 282771
**GASTÉLUM LAW,**
**A PROFESSIONAL CORPORATION**
3767 Worsham Ave.
Long Beach, California 90808
Tel: (213) 340-6112
Fax: (213) 402-8622
Email: dgastelum@gastelumfirm.com

Christian Contreras, SBN 330269
**LAW OFFICES OF CHRISTIAN CONTRERAS**
**PROFESSIONAL LAW CORPORATION**
360 E. 2nd St., 8th Floor
Los Angeles, California 90012
Tel: (323) 435-8000
Fax: (323) 597-0101
Email: CC@Contreras-Law.com

Attorneys for Plaintiffs,
ESTATE OF JOSEPH POSARD, by and through successors in interest, A.P. and
E.P.; A.P., a minor, by and through Guardian Ad Litem, Susan Posard; E.P. a minor,
by and through Guardian Ad Litem, Susan Posard; ELLEN POSARD, individually

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF JOSEPH POSARD, by and through successors in interest, A.P. and E.P.; A.P., a minor, by and through Guardian Ad Litem, Susan Posard; E.P. a minor, by and through Guardian Ad Litem, Susan Posard; ELLEN POSARD, individually,<br><br>Plaintiffs,<br><br>v.<br><br>LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; a public entity; COUNTY OF LOS ANGELES, a public entity; SHERIFF ALEX VILLANUEVA, in his individual and official capacities; SHERIFF ROBERT LUNA, in his individual and official capacities; LOS ANGELES COUNTY DEPARTMENT OF HEALTH SERVICES; and DOES 1 through 10, individually, jointly and severally,<br><br>Defendants. | **CASE NO.: 2:23-cv-10460**<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Failure to Protect from Harm, Fourteenth Amendment Violation (42 U.S.C. § 1983);<br>2. Failure to Provide Medical and Mental Health Care, Fourteenth Amendment Violation (42 U.S.C. § 1983);<br>3. Deprivation of the Right to Familial Relationship with Decedent (42 U.S.C. § 1983);<br>4. Policies, Customs, Practices Causing Constitutional Violations (*Monell*, 42 U.S.C. § 1983);<br>5. Supervisory Liability Causing Constitutional Violations (Failure to Properly Train, Supervise and Discipline, 42 U.S.C. § 1983);<br>6. Negligence – Wrongful Death;<br>7. Negligence – Medical Malpractice;<br>8. Violation of California Government Code §845.6;<br>9. Violation of California Civil Code §52.1 (Tom Bane Act);<br>10. Declaratory Relief (28 U.S.C. § 2201)<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT FOR DAMAGES**

**COME NOW** Plaintiffs ESTATE OF JOSEPH POSARD, by and through successors in interest, A.P. and E.P.; A.P., a minor, by and through Guardian Ad Litem, Susan Posard; E.P. a minor, by and through Guardian Ad Litem, Susan Posard; and ELLEN POSARD, individually, and allege as follows:

## I.

## INTRODUCTION

1.      This civil rights action seeks to establish the true and unequivocal facts surrounding the in-custody death of pretrial detainee Joseph Posard at the Los Angeles County Sheriff's Department, Twin Towers Correctional Facility on December 10, 2022. This action also seeks to bring to public light the deliberate disregard for safety and  protection carried out by the individual defendants in the present action.

2.      Joseph ("Joe") Posard was the loving father of two young girls, 11-year-old E.P. and 14-year-old A.P.  Joe is described by his family as a man who was compassionate, creative, and adventurous.  A natural musician with a passion for music and art, Joe was a talented pianist, guitarist and original music writer.  Joe was also known for being quite the outdoors man, who loved to bike, surf, camp, and mountain climb.  He had a penchant for traveling the world and experiencing different cultures with the love of his life, Susan Posard.  Joe obtained his master's in social worker at UCLA.  After almost a decade of working as a school social worker, Joe opened his own private counseling practice where he found his calling to help others. Joe enjoyed many things in life, including gardening, surfing, playing music, a never-ending list of remodeling projects, a prolific hat collection, his devotion to Temple and sharing big holiday celebrations.  But these interests paled in comparison

**COMPLAINT FOR DAMAGES**

to Joe's love for "*my girls*"—his daughters.

3.      In 2022, Defendant COUNTY OF LOS ANGELES' correctional facilities, including the LOS ANGELES COUNTY SHERIFF'S DEPARTMENT's Twin Towers Correctional Facility, Men's Central Jail, Century Regional Detention Facility, Inmate Reception Center and the Pitchess Detention Facilities (hereinafter collectively "COUNTY Jails"), have resulted in forty-three (43) in-custody deaths. The deaths include eight (8) overdoses, three (3) homicides resulting from inmate-on-inmate violence, four (4) suicides, twenty (20) natural cause deaths, one (1) undetermined death, two (2) accidental deaths and five (5) pending investigation.

4.      Joseph Posard's death is one of four (4) suicide deaths within the COUNTY Jails during the 2022 calendar year and was the thirty-ninth (39) death that year.

5.      Long before Joseph Posard's death, each of the individually named Defendants from the COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT and the LOS ANGELES COUNTY DEPARTMENT OF HEALTH SERVICES knew that there existed a great indifference to the safety and protection of the inmates who were in the government's custody within the COUNTY Jails.

6.      The Defendants' deliberate indifference towards pretrial detainees suffering from mental health issues resulted in dozens of suicides since 2018. From January 2018 through September 2023, twenty-six (26) inmates have died by suicide within the COUNTY Jails.

7.      The individuals defendants named in the present lawsuit were repeatedly put on notice of the great dangers which existed within the COUNTY Jails through the long history of in-custody deaths; the federal civil rights action *United States of America v. County of Los Angeles and Los Angeles County Sheriff Jim McDonnell*, United States District Court, Central District of California, Case No. 15-5903 targeting the COUNTY Jails' custody and medical staff's deliberate indifference to

the safety and protection of inmates, particularly those who were at risk of suicide; the warnings from neutrally-selected experts regarding the COUNTY Jails' custody and medical staff's failures amounting to constitutional violations; the U.S. Department of Justice's request for federal court oversight of comprehensive reforms designed to prevent and respond more effectively to suicides and self-inflicted injuries; and through a voluntarily entered Settlement Agreement which required that the COUNTY OF LOS ANGELES and the LOS ANGELES COUNTY SHERIFF'S DEPARTMENT remedy all of the deficiencies addressed in the *United States of America v. County of Los Angeles and Los Angeles County Sheriff Jim McDonnell* federal civil rights action.

8.     Despite this long history of complete disregard to inmate safety and protection, each of the individually named defendants in this lawsuit deliberately failed to take even modest actions to prevent in-custody deaths at the COUNTY Jails. Thus, by the time Joseph Posard was taken into custody and placed at the Twin Towers Correctional Facility, the jail was infested with endemic, ongoing and unabated risks of injury or death to inmates – risks which indeed resulted in Joseph Posard's death on December 10, 2022.

## II.
## JURISDICTION AND VENUE

9.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourteenth Amendment to the United States Constitution, and the laws and Constitution of the State of California. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

10.     This Court has the authority to grant the requested declaratory relief pursuant to 28 U.S.C. §§ 2201, as well as Federal Rules of Civil Procedure 57, including pursuant to the Court's inherent equitable powers.

///

///

11.     Venue is proper within the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all Defendants reside within this district and the events and omissions giving rise to Plaintiffs' claims occurred within this district.

### III.
### PENDANT CLAIMS

12.     Plaintiffs presented their government claims on May 8, 2023. The government claims were rejected on June 8, 2023; however, on June 26, 2023, the COUNTY OF LOS ANGELES agreed to extend the statute of limitations to June 10, 2024 in an effort to resolve the *Posard* matter during pre-litigation.  As such, Plaintiffs have complied with the California Tort Claims Act requirements with respect to their claims arising under state law.

13.     With respect to these supplemental state claims, Plaintiffs request that this Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over such claims as they arise from the same facts and circumstances which underlie the federal claims.

### IV.
### PARTIES

**A. Plaintiffs**

14.     Decedent Joseph Posard was a 44-year-old father of two children, A.P., and E.P. At the time of his death, he was a pretrial detainee who resided in the County of Los Angeles, California. The claims made by Plaintiff ESTATE OF JOSEPH POSARD are brought by the successors in interest, A.P., and E.P.

15.     Plaintiff A.P., a minor by and through her Guardian Ad Litem, Susan Posard, is and was, at all times relevant hereto, a resident of the County of Los Angeles, California, and was the natural daughter of decedent Joseph Posard. Plaintiff A.P. was 13 years old when her father, Joseph Posard, died in-custody at the COUNTY Jails. Plaintiff brings these claims pursuant to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq., which provide for survival and

wrongful death actions. Plaintiff also brings her claims individually and on behalf of decedent Joseph Posard on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and California law.

16.     Plaintiff E.P., a minor by and through her Guardian Ad Litem, Susan Posard, is and was, at all times relevant hereto, a resident of the County of Los Angeles, California, and was the natural daughter of decedent Joseph Posard. Plaintiff E.P. was 10 years old when her father, Joseph Posard, died in-custody at the COUNTY Jails. Plaintiff brings these claims pursuant to California Code of Civil Procedure §§ 377.20 *et seq.* and 377.60 *et seq.*, which provide for survival and wrongful death actions. Plaintiff also brings her claims individually and on behalf of decedent Joseph Posard on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and California law.

17.     Plaintiff ELLEN POSARD, is and was, at all times relevant hereto, a resident of the County of Alameda, California, and was the natural mother of decedent Joseph Posard. Plaintiff brings her claims individually and on behalf of decedent Joseph Posard on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and California law.

**B. Defendants**

18.     Defendant COUNTY OF LOS ANGELES (hereinafter also "COUNTY") owns, operates, manages, directs and controls Defendant LOS ANGELES COUNTY SHERIFF'S DEPARTMENT (hereinafter also "LASD"), also a separate public entity, which employs other Doe Defendants in this action. At all times relevant to the facts alleged herein, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees, including LASD employees, complied with the laws and the Constitutions of the United States and of the State of California.  Defendant COUNTY, through LASD, is and was responsible for ensuring the protection and safety of all persons incarcerated at the LASD correctional facilities, including the

Twin Towers Correctional Facility (hereinafter "TTCF"), Men's Central Jail (hereinafter "MCJ"), Century Regional Detention Facility (hereinafter "CRDF"), Inmate Reception Center (hereinafter "IRC") and the Pitchess Detention Facilities (hereinafter collectively "COUNTY Jails").

19.     Defendant ALEX VILLANUEVA ("SHERIFF VILLANUEVA"), at all times mentioned herein, was the Sheriff of the LOS ANGELES COUNTY SHERIFF'S DEPARTMENT (hereinafter also "LASD"), the administrator of the COUNTY Jails, including TTCF, and the custodian of the pretrial detainees within it; and the ultimate policy maker for the LASD and the COUNTY Jails.[1] SHERIFF VILLANUEVA and his custody staff, or those working in the jail, DOES 1-10, were peace officers, sergeants, captains, lieutenants, commanders and undersheriffs, doctors, nurses and/or civilian employee agents, policy makers and/or agents and representatives of the COUNTY and the LASD, as well as employees, agents and representatives of said Defendants. At all times relevant hereto, each of those named as DOES, were acting within the course and scope of their employment which was incidental to Defendants COUNTY and the LASD's enterprise, and the wrongful acts hereinafter described flow from the very exercise of their authority. They are sued in their individual and official capacities. SHERIFF VILLANUEVA is sued both in his official and personal and individual capacity as a supervisory official for his own culpable action or inaction in the training, supervision, or control of his subordinates, or for his acquiescence in the constitutional deprivations which this Complaint alleges, or for conduct that showed a reckless or callous indifference to the rights of others. SHERIFF VILLANUEVA's affirmative conduct involves his failure to ensure enforcement of policies, rules, or directives that set in motion a series of acts by

_____

[1] Notably, Sheriff Villanueva conceded to Sheriff Luna in his bid for re-election in November of 2022.  See Corina Knoll & Jill Cowan, *The L.A. Sheriff Concedes After a Combative First Term*, N.Y. TIMES (Nov. 15, 2022), available https://www.nytimes.com/2022/11/15/us/politics/los-angeles-sheriff-villanueva-concedes.html.  Sheriff Villanueva was in office from December 3, 2018 to December 5, 2022—five days prior to Mr. Posard's death. See Wikipedia, Alex Villanueva, available https://en.wikipedia.org/wiki/Alex_Villanueva

**COMPLAINT FOR DAMAGES**

1  others which he knew or reasonably should have known, would cause others to inflict

2  the constitutional injury.

3        20.    Defendant ROBERT LUNA ("SHERIFF LUNA"), at all times

4  mentioned herein, was the Sheriff of the LOS ANGELES COUNTY SHERIFF'S

5  DEPARTMENT (hereinafter also "LASD"), the administrator of the COUNTY Jails,

6  including TTCF, and the custodian of the pretrial detainees within it; and the ultimate

7  policy maker for the LASD and the COUNTY Jails.  SHERIFF LUNA and his

8  custody staff, or those working in the jail, DOES 1-10, were peace officers, sergeants,

9  captains, lieutenants, commanders and undersheriffs, doctors, nurses and/or civilian

10  employee agents, policy makers and/or agents and representatives of the COUNTY

11  and the LASD, as well as employees, agents and representatives of said Defendants.

12  At all times relevant hereto, each of those named as DOES, were acting within the

13  course and scope of their employment which was incidental to Defendants COUNTY

14  and the LASD's enterprise, and the wrongful acts hereinafter described flow from the

15  very exercise of their authority. They are sued in their individual and official

16  capacities. SHERIFF LUNA is sued both in his official and personal and individual

17  capacity as a supervisory official for his own culpable action or inaction in the

18  training, supervision, or control of his subordinates, or for his acquiescence in the

19  constitutional deprivations which this Complaint alleges, or for conduct that showed a

20  reckless or callous indifference to the rights of others. SHERIFF LUNA's affirmative

21  conduct involves his failure to ensure enforcement of policies, rules, or directives that

22  set in motion a series of acts by others which he knew or reasonably should have

23  known, would cause others to inflict the constitutional injury.

24        21.    Defendant COUNTY owns, operates, manages, directs and controls

25  Defendant LOS ANGELES COUNTY DEPARTMENT OF HEALTH SERVICES

26  (hereinafter also "LACDHS"), also a separate public entity, which employs other Doe

27  Defendants in this action. At all times relevant to the facts alleged herein, Defendant

28  COUNTY was responsible for assuring that the actions, omissions, policies,

procedures, practices and customs of its employees, including the LACDHS Correctional Health Services employees (hereinafter also "CHS") which are assigned to provide medical care to inmates housed at the COUNTY Jails, complied with the laws and the Constitutions of the United States and of the State of California. Defendant COUNTY, through LACDHS, is and was responsible for ensuring the safety of all persons incarcerated at the COUNTY Jails, including the TTCF, and providing them appropriate medical and mental health treatment.

22.     Defendants COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, LOS ANGELES COUNTY DEPARTMENT OF HEALTH SERVICES, SHERIFF VILLANUEVA, and SHERIFF LUNA will hereinafter be referred to as the COUNTY DEFENDANTS.

23.     Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 10 ("DOE Defendants") and therefore sue these Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will amend their complaint to state the names and capacities of each DOE Defendant when they have been ascertained.

24.     The identities, capacities, and/or nature of involvement of the defendants sued as DOES 1 through 10 are presently unknown to the Plaintiffs who therefore sue these defendants by fictitious names. Plaintiffs are informed, believe, and thereupon allege that DOES 1 through 10 include individual law enforcement personnel and medical personnel employed by the LASD, and that they were involved in some manner and are legally responsible for the wrongful acts and conduct alleged herein. Plaintiffs will amend this complaint to substitute the DOE Defendants' true names and capacities when they have been ascertained. Plaintiffs are informed, believe, and thereupon allege that each DOE defendant is a resident of California. Upon information and belief, DOES 1 through10 were and still are residents of the County of Los Angeles, California. DOES 1 through 10 are sued in both their individual and

official capacities.

25.    At all relevant times, DOES 7 and 8 were managerial, supervisorial, training, and/or policymaking employees of Defendant COUNTY. At the time of the incident, DOES 7 and 8 were acting under color of law within the course and scope of their duties as employees for the COUNTY. They had supervisorial authority over DOES 1-10, and the COUNTY employees at the COUNTY Jails. DOES 7 and 8 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

26.    At all relevant times, DOES 9 and 10 were managerial, supervisorial, training, and/or policymaking employees of Defendant COUNTY. At the time of the incident, DOES 9 and 10 were acting under color of law within the course and scope of their duties as employees for the LASD and/or the COUNTY. They had supervisorial authority over DOES 1-10, and the employees of the LASD. DOES 9 and 10 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

27.    Each of the defendants, including the DOE defendants, caused, and is responsible for, the unlawful conduct and resulting injuries suffered by Plaintiffs by, among other things, personally participating in the unlawful conduct, acting jointly, or conspiring with others who did so; by ordering, authorizing, acquiescing in, or setting in motion policies, plans, or actions that led to the unlawful conduct, by failing to take action to prevent the unlawful conduct; by failing and refusing to initiate and maintain adequate training and supervision; by failing to enact policies to address the constitutional rights of protesters despite the obvious need for such a policy; and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action.

28.    Plaintiffs are informed and believe and thereon allege that each of the Defendants was at all material times an agent, servant, employee, partner, joint

venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiffs are further informed and believe and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged. At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiffs' and decedent Joseph Posard's constitutional rights and other harm.

29.    Plaintiffs are informed, believe, and thereupon allege that, at all times relevant hereto, Defendants, and each of them, acted as the agents, servants, and employees of each of the other defendants.

30.    In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted within the course and scope of their employment.

31.    In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under the color of law.

**V.**

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

32.    The LASD custody staff and the CHS medical staff were aware that Joseph Posard had a history of multiple indicators of elevated suicide risk.  Indeed, Mr. Posard displayed gravely concerning suicidal behavior and emotional distress throughout his 2022 incarcerations at the COUNTY Jails:

33.    On July 21, 2022, Mr. Posard was arrested on a charge of second-degree robbery.  Any competent mental health provider should have considered the charge of second-degree robbery to be a red flag, particularly because such a criminal charge was highly unusual for a practicing Licensed Clinical Social Worker ("LCSW") clinician.  Any competent mental health provider would have noted this arrest as a significant problem with impulse control, which too is associated with an elevated

1    suicide risk.

2    34.    The CHS Medical Screening Form dated July 21, 2022 indicated that at

3    the time of this screening, Mr. Posard denied feeling suicidal; denied any history of

4    attempted suicide; denied medical treatment; denied taking medications; denied

5    medical problems; denied AOD [alcohol and other drug] use. However, Mr. Posard

6    would later confirm all of these problems when he was subsequently evaluated by

7    other clinic staff.  Because of this, Mr. Posard's subsequent denials of suicidal

8    thinking should have been considered equally unreliable.

9    35.    Indeed, the CHS medical staff were aware that Mr. Posard suffered from

10   alcohol abuse and bipolar disorder.  They were also made aware that Mr. Posard had

11   a history of treatment with multiple psychiatric medications, including zolpidem

12   (Ambien); alprazolam (Xanax); quetiapine (Seroquel); lamotrigine (Lamictal); and

13   buspirone (BuSpar). Any competent mental health staff would have considered this

14   history of mental disorder and treatment with psychiatric medications to be associated

15   with a significantly elevated risk of suicide.

16   36.    On August 1, 2022, Mr. Posard was a victim of an assault by six other

17   inmates.  As a result, Mr. Posard was evaluated on August 2, 2022 by Raul

18   Hernandez, R.N. During the evaluation, Mr. Posard expressed the following suicidal

19   ideations to Nurse Hernandez: "I was jumped by six guys about two days ago. I am

20   feeling paranoid. I am feeling suicidal."  Mr. Posard further informed the mental

21   health staff that he had attempted suicide several times in the past and that he heard

22   voices in his head telling him to kill himself.  Nurse Hernandez placed Mr. Posard on

23   Suicide Watch in the High Observation Housing unit.

24   37.     On August 5, 2022, Mr. Posard was evaluated by psychiatrist Ivan

25   Baroya, M.D.  Following the evaluation, Mr. Posard continued to be placed on

26   Suicide Watch with suicide precautions, including a safety gown and blanket.

27   38.    On August 9, 2022, a psychological evaluation was performed by

28   Violeta Avakyan, P.S.W. (psychiatric social worker).  Multiple indicators of

significantly elevated suicide risk were evident in the clinical note provided by Ms. Avakyan, including statements made by Mr. Posard that he was "feeling suicidal" and was experiencing feelings of sadness, loneliness, worry, anxiousness related to isolation and a lack of social support. Mr. Posard was then deemed a "medium risk of suicide" and removed Mr. Posard from Suicide Watch despite the fact that she was aware of the multiple signs that Mr. Posard continued to have an elevated risk of suicide.

39. On August 30, 2022, an evaluation was conducted by psychologist intern Staci Atkins, Psy.D. who was supervised by a licensed psychologist. Dr. Atkins reported that Mr. Posard was "manic, delusional and paranoid" and ordered continued suicide precautions, including a safety gown, mattress and blanket.

40. On September 9, 2022, Dr. Atkins conducted another evaluation of Mr. Posard. During this evaluation, Mr. Posard provided completely contradictory and unreliable information. Despite this, Dr. Atkins failed to alert other clinicians that Mr. Posard's self-reporting information could not be trusted, including statements regarding suicidal propensities.

41. Mr. Posard was released from LASD custody on October 13, 2022. Six weeks later, on December 8, 2022, Mr. Posard was arrested and rebooked into the COUNTY Jails.

42. On December 9, 2022, Mr. Posard was transferred from MCJ to the Twin Towers Correctional Facility. According to the CHS records, Mr. Posard was admitted into the treatment center because of the following admission reasons: (1) COVID positive, (2) bipolar; and (3) depression.

43. The CHS records from July through October 2022 indicated that Mr. Posard had a history of suicidal behavior *prior* to and *during* his incarceration. This past suicidal behavior was noted during several mental health evaluations that were conducted by the CHS staff at the COUNTY Jails from July through October 2022. It was also well documented that Mr. Posard had a history of psychiatric medications

1    that included zolpidem (Ambien); alprazolam (Xanax); quetiapine (Seroquel);

2    lamotrigine (Lamictal); and buspirone (BuSpar).

3         44.    Upon information and belief, the LASD custody staff and CHS medical

4    staff had access to these prior records upon Mr. Posard's return to LASD custody on

5    December 8, 2022. Any competent mental health staff would have considered Mr.

6    Posard's past and current suicidal behavior; criminal charges indicative of impulse

7    control; substance abuse; and history of mental disorder and treatment with

8    psychiatric medications to be significant elevated risks of suicide in a jail

9    environment warranting a suicide prevention plan with heightened levels of

10   supervision and monitoring and the removal of any suicide hazards from Mr.

11   Posard's housing unit.

12        45.    The LASD custody staff and the CHS medical staff ignored all of the

13   signs of significantly elevated suicide risk when they decided on December 8 or 9,

14   2022 (i.e., Mr. Posard's return to the COUNTY Jails) to house Mr. Posard alone in a

15   hospital dormitory with no direct observation capabilities, with no suicide precautions

16   and full access to a litany of items which could be used for self-harm. They

17   additionally failed to consult with the mental health clinicians regarding Mr. Posard's

18   elevated risk of suicide. Despite all of the overt signs that Mr. Posard had an elevated

19   risk of suicide, he was placed alone in a hospital dormitory with no suicide

20   precautions and no increased observation or monitoring by correctional officers.

21        46.    The LASD custody staff and CHS medical staff failed to implement a

22   suicide prevention plan which put in place monitoring or housing protocols for

23   inmates that were removed from Suicide Watch status but continued to have an

24   elevated risk of suicide. Any competent custody staff and/or mental health staff

25   would have recognized upon Mr. Posard's booking on December 8, 2022 that he had

26   a significantly elevated suicide risk, and would have proceeded to place him in

27   housing with substantially improved observation capabilities and without suicide

28   hazards, such as electrical cords and showerheads that could be used as ligatures and

**COMPLAINT FOR DAMAGES**

1  attachment points, respectively.

2      47.    The LASD custody staff and CHS medical staff were not provided with

3  training or supervision regarding what they should do if an inmate was removed from

4  Suicide Watch but continued to have an elevated suicide risk. There were no

5  guidelines for additional monitoring or the removal of suicide hazards that could be

6  used as ligatures (e.g., electrical cords) and attachment points (e.g., shower heads) for

7  inmates with an elevated risk after they were removed from Suicide Watch.

8      48.    On December 10, 2022, Mr. Posard removed the electrical cord from

9  one of the hospital beds and proceeded to walk over to the shower area of the large

10  hospital dormitory Defendants had housed him in by himself and without any

11  supervision and proceeded to hang himself by attaching the cord to the shower head.

12  Ultimately, Mr. Posard had easy access to the items he needed to complete his suicide

13  in the hospital dormitory.

14      49.    Upon information and belief, due to the COUNTY Jails patterns and

15  practices of not conducting proper and timely Title 15 welfare and safety checks,

16  Joseph Posard's dire need for emergency medical intervention went unnoticed by the

17  LASD custody and the CHS medical staff, who were responsible for monitoring and

18  ensuring the welfare of all inmates, including Joseph Posard.

19      50.    Mr. Posard displayed recurrent signs of elevated suicide risk prior to

20  December 10, 2022, yet the officers did nothing to ensure direct observation or to

21  increase the safety of his housing.

22      51.    Mr. Posard did not respond to life-saving measures as he had been dead

23  for an appreciable amount of time before the custody staff finally found him hanging

24  in the shower.  He was ultimately pronounced dead at 3:06 p.m. on December 10,

25  2023.

26      52.    Joseph Posard was forty-four years old when he died on December 10,

27  2022, while he was in custody at the Twin Towers Correctional Facility.

28  ///

53. Joseph Posard was a pretrial detainee, and therefore, innocent until proven guilty.

54. Plaintiffs timely and properly filed tort claims with the County of Los Angeles pursuant to California Government Code sections 910, *et seq*., and this action is timely filed within all applicable statutes of limitation.

55. This complaint may be pled in the alternative pursuant to Federal Rule of Civil Procedure 8(d).

## VI.

## FACTUAL ALLEGATIONS COMMON TO *MONELL* AND SUPERVISORIAL CAUSES OF ACTION

56. Based upon the principles established in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), Defendants are liable for all injuries sustained by Plaintiffs as set forth herein. To establish municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), a plaintiff must prove: (1) that [the plaintiff] possessed a constitutional right of which she was deprived; (2) that the municipality had a policy/custom/practice; (3) that this policy/custom/practice amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy/custom/practice is the moving force behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir, 2011). The policy/custom/practice "need only cause the constitutional violation; it need not be unconstitutional per se." *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994). Recognized paths to *Monell* liability include: (1) an unconstitutional custom, practice or policy behind the violation of rights; (2) a deliberately indifferent omission, such as a failure to train or failure to have a needed policy; and (3) a final policy-maker's involvement in or ratification of the conduct underlying the violation of rights. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249-1250 (9th Cir. 2010).

///

///

**COMPLAINT FOR DAMAGES**

**A. For Decades, the U.S. Department of Justice Has Consistently Found the Los Angeles County Jail System to Violate Constitutional Rights of Inmates with Mental Illness and Failures to Provide Adequate Suicide Prevention.**

57. On August 5, 2015, the United States Department of Justice filed a lawsuit against the COUNTY OF LOS ANGELES and the LOS ANGELES COUNTY SHERIFF'S DEPARTMENT for violations of the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C.§ 1997-l997j, as well as violations of the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141.[2]

58. That same day, the Department of Justice reached a settlement with the COUNTY OF LOS ANGELES and the LOS ANGELES COUNTY SHERIFF'S DEPARTMENT to protect inmates from serious suicide risks and excessive force in the COUNTY Jails.[3]

59. The settlement agreement sought to address the COUNTY's unconstitutional patterns and practices of providing inmates constitutionally deficient mental health care for inmates, including inadequate suicide prevention practices.

60. The Department of Justice requested District Court oversight of the comprehensive reforms agreed to in the settlement agreement.  Specific to mental health issues, the reforms were designed to prevent and respond more effectively to suicides and self-inflicted injuries through the following measures:

---

[2] *See United States of America v. County of Los Angeles and Los Angeles County Sheriff Jim McDonnell*, United States District Court, Central District of California, Case No. 15-5903, Docket No. 1, filed August 5, 2015.

[3] *See* United States Department of Justice Press Release: "Justice Department Reaches Agreement with Los Angeles County to Implement Sweeping Reforms on Mental Health Care and Use of Force Throughout the County Jail System," August 5, 2015, available at https://www.justice.gov/opa/pr/justice-department-reaches-agreement-los-angeles-county-implement-sweeping-reforms-mental

a. additional steps to recognize, assess and treat inmates with mental illness, from intake to discharge;

b. significant new training on crisis intervention and interacting with inmates with mental illness for new and existing custody staff;

c. improved documentation in inmates' medical and mental health records to ensure continuity of care;

d. improved communication between custody and mental health staff and increased supervision of mentally ill and suicidal inmates;

e. steps to mitigate suicide risks within the jails;

f. increased access to out-of-cell time for mentally ill inmates; and

g. improved investigation and critical self-analysis of suicides, suicide attempts and other critical events.

61. Prior to the 2015 Settlement Agreement, there existed a culture of indifference towards inmates at the COUNTY Jails, particularly those inmates who struggled with mental health issues. This culture of indifference dated back for decades:

a. In June 1996, the Department of Justice notified the COUNTY OF LOS ANGELES and Sheriff that it was opening an investigation under CRIPA, 42 U.S.C. § 1997, to determine whether the conditions in the Jails violate the constitutional rights of its inmates.

b. In September 1997, the Department of Justice issued a findings letter alleging that mental health care at the COUNTY Jails violated inmates' constitutional rights. The letter further alleged that systemic deficiencies contributed to the violations, including inadequate: (1) intake screening and evaluation, (2) diagnosis, (3) referral to mental health professionals, (4) treatment plans, (5) administration of medications, (6) suicide prevention, (7) tracking and medical record keeping, (8) staffing, (9) communication, and (10) quality assurance.

c. In December 2002, following extensive negotiations and additional site visits, the Parties entered into a Memorandum of Agreement ("MOA") that outlined a series of reforms to ensure that adequate and reasonable mental health care services are provided at the Jails. The MOA also included measures to protect inmates with mental illness from abuse and mistreatment.

d. Under the MOA, the Department of Justice recognized that the COUNTY OF LOS ANGELES and the Sheriff made improvements to the delivery of mental health care at the COUNTY Jails; however, systemic deficiencies remained related to suicide prevention and mental health care that violated inmates' constitutional rights.  The Department of Justice notified the COUNTY OF LOS ANGELES and the Sheriff of these conclusions in a letter dated June 4, 2014, following on-site evaluations with expert consultants.

e. In September 2013, the Department of Justice opened a separate investigation of the Jails under CRIPA and 42 U.S.C. §14141 ("Section 14141") to address allegations of use of excessive force against all inmates at the Jails, not just inmates with mental illness.

f. The investigations revealed the following:  "Defendants have repeatedly failed to take reasonable measures to protect prisoners against the serious harm from suicide and self-harm due to, but not limited to: ( 1) inadequate suicide prevention measures; (2) lack of appropriate screening by custody and mental health staff to assess suicide risk; (3) lack of appropriate supervision, observation, and monitoring of prisoners, including those identified as at risk of suicide; (4) inadequate communication between mental health care and custody staff; (5) lack of appropriate multi-disciplinary treatment plans; and (6) an inadequate suicide or critical incident review process. Defendants have repeatedly

1   failed to provide adequate mental health services, including

2   psychological and psychiatric services, to prisoners with serious

3   psychiatric needs that are known or obvious due to, but not limited to,

4   insufficient and inadequate: (1) in-patient care for those in need; (2)

5   crisis intervention; (3) therapy, clinical contacts, and group

6   programming; (4) treatment and referrals for prisoners in general

7   population; (5) medication administration practices, including treatment

8   to prisoners refusing medication; and (6) discharge planning."[4]

9   62.   As a result of these investigative findings, the Department of Justice

10  filed the *USA v. County of Los Angeles, et al*. lawsuit in August of 2015.

**B. Defendant Supervisors Had Knowledge of Inadequacy and Delivery of
Mental Health Care at the Los Angeles County Jails and Failed to Take
Corrective Action.**

14  63.   Prior to December 10, 2022, high level COUNTY supervisors, including

15  SHERIFF VILLANUEVA and SHERIFF LUNA, knew or should have known of a

16  history of years of notice of ongoing failure to provide inmates indicated and timely

17  reasonable medical/mental health care, knew or should have known of inadequate

18  and/or incompetent staffing, insufficient and inadequate cells and beds, incompetent

19  and inadequate provision of health care and delivery thereof, denying access to

20  outside hospitals or other mental health programs, failure to take corrective measures,

21  including ignoring judicial orders to abate or take corrective action regarding medical

22  and mental health care to pretrial detainees, notice from quality assurance and death

23  reviews, from litigation alleging failure to provide reasonable medical and mental

24  health care, and from publications of endemic, ongoing and unabated risks of injury

25  or death to inmates. The number of lawsuits against the COUNTY and throughout the

---

[4] *See United States of America v. County of Los Angeles and Los Angeles County Sheriff Jim
McDonnell*, United States District Court, Central District of California, Case No. 15-5903, Docket
No. 1 at parags. 22-23, filed August 5, 2015.

state and the evidence available from those actions is troubling and demonstrative of Defendants' years of deliberate indifference to known ongoing hazards to ill detainees and their failure to take corrective action.

64.     As a preamble, between 2018 and 2023, the COUNTY had notice of a slew of cases revealing constitutional violations of inmates' rights to reasonable medical care. Due diligence would have revealed these breaches of constitutional mandates:

65.     In 2022, Defendant LOS ANGELES COUNTY SHERIFF'S DEPARTMENT'S COUNTY Jails have resulted in forty-three (43) in-custody deaths. The deaths include eight (8) overdoses, three (3) homicides resulting from inmate-on-inmate violence, four (4) suicides, twenty (20) natural cause deaths, one (1) undetermined death, two (2) accidental deaths and five (5) pending investigation.

66.     Joseph Posard's death is one of four (4) suicide deaths within the COUNTY Jails during the 2022 calendar year, and was the thirty-ninth (39) death that year.

67.     The Defendants' deliberate indifference towards pretrial detainees suffering from mental health issues resulted in several suicides since 2018. From January 2018 through March 2023, twenty-six (26) inmates have died by suicide within the COUNTY jails:

68.     In 2018, Daniel Arteaga, a 27-year-old male, committed suicide while in-custody at the TTCF by hanging himself in his cell. Mr. Arteaga was on suicide watch due to his history of bipolar disorder and schizophrenia. On January 22, 2018, Mr. Arteaga was found in his cell suspended between the wall and bunkbed with his chin resting on the top bunk. It is estimated that Mr. Arteaga was hanging for approximately 15-20 minutes. The entire incident was captured on video surveillance. Mr. Arteaga was pronounced brain dead at the hospital four days after being transported from the COUNTY jail in cardiac arrest. Mr. Arteaga had only been incarcerated for approximately three weeks prior to his death.

**COMPLAINT FOR DAMAGES**

69.     In 2018, Steven Thach was found alone and unresponsive in his cell from an apparent suicide. Mr. Thach was only 24 years old at the time of his death. Mr. Thach had a known history of schizophrenia. Mr. Thach was not found unresponsive until after custodial staff delivered snacks to inmates in their cells on March 28, 2023. Mr. Thach was observed to be sitting down with a mattress cover wrapped around his neck and the rail of his bunkbed. He was pronounced dead at the scene.

70.     In 2018, Alberd Tersargyan committed suicide while in-custody at the COUNTY Jail by hanging himself with a trash bag. Mr. Tersargyan was 81 years old at the time of his death. He had been incarcerated since 2010. Upon arrest, Mr. Tersargyan was placed on suicide watch. On April 1, 2018, Mr. Tersargyan was found unresponsive in his cell during an inmate check. He was subsequently transported to the hospital in cardiac arrest. Mr. Tersargyan was pronounced dead at the hospital later that evening.

71.     In 2018, Lewis Nyarecha committed suicide while in-custody at the TTCF. Mr. Nyarecha was a 25-year-old pretrial detainee who had been in-custody at the COUNTY jail for less than one month prior to his death. On August 28, 2018, Mr. Nyarecha was found unresponsive in his cell in a rigor mortis state which was indicative of a muscle spasm likely induced by his ingestion of quetiapine, a medication commonly used to treat schizophrenia. According to the COUNTY's autopsy report, the level of quetiapine found in Mr. Nyarecha was nearly three times the lethal level. Mr. Nyarecha was pronounced dead at the scene.

72.     In 2018, pretrial detainee Rufino Paredes committed suicide while in-custody. On December 5, 2018, Mr. Paredes was initially found face down with a sheet tied around his neck and the other end of the sheet attached to the bottom bar of his cell door. Mr. Paredes was 30 years old at the time of his death. He had a history of mental illness specifically depression. He had been incarcerated for less than 24 hours prior to his death. Mr. Paredes was pronounced dead at the scene despite

resuscitative efforts.

73.     In 2019, Thomas Banuelos, a 30-year-old male, committed suicide while in-custody at the COUNTY jail. On March 15, 2019, Mr. Banuelos was found in his cell hanging from his bunkbed with a sheet wrapped around his neck. It is estimated that Mr. Banuelos was on the floor unresponsive for approximately 30 minutes. Mr. Banuelos was transported to the hospital where he was later pronounced dead.  Mr. Banuelos had been incarcerated for less than two weeks prior to his death.

74.     In 2019, pretrial detainee Jeffrey Barnett died while in-custody at the TTCF due to an apparent suicide. Mr. Barnett was 53 years old at the time of his death. On April 8, 2019, Mr. Barnett was found hanging and partially suspended in his cell with ligature marks around his neck. Multiple suicide notes were found in Mr. Barnett's cell that were written over approximately a one-week period.

75.     In 2019, Cody Jones, a 25-year-old male, committed suicide while in-custody at the COUNTY Jail. On June 21, 2019, Mr. Jones was found hanging from his jail cell door, approximately 4 feet above the ground, with a bedsheet around his neck that was tightly braided. Mr. Jones was transported to the hospital where he was subsequently pronounced dead. However, Mr. Jones's father had also committed suicide when Mr. Jones was a child.

76.     In 2019, Patrick Clancy passed away in a nursing home after being placed on hospice care. Approximately one year prior, Mr. Clancy was found hanging in his cell while in custody at the TTCF. Mr. Clancy was initially transported to the hospital where he was placed on a ventilator and never regained consciousness. While at Twin Towers, Mr. Clancy was in a mental health unit. He had been incarcerated for only three days prior to his suicide. Mr. Clancy was 59 years old at the time of his death on November 19, 2019.

77.     In 2020, Michael Zivalich, a 31-year-old male, committed suicide while in-custody at the COUNTY jail. On July 19, 2020, Mr. Zivalich was found hanging from his bunkbed with a bedsheet tied around his neck. Mr. Zivalich had a known

history of depression and attention deficit disorder. He had also made prior statements that if he was ever incarcerated again, he would kill himself. Mr. Zivalich had a court hearing the day prior to his suicide in which he was informed he would be facing a prison sentence of five years. Despite this, Mr. Zivalich was not on Suicide Watch. Mr. Zivalich had been incarcerated for only three days prior to his death.

78.    In 2020, Roberto Escobar attempted suicide while in-custody at the Twin Towers Correctional Facility by jumping from his jail cell bed. Mr. Escobar's jump was approximately 6 feet from the ground. Mr. Escobar was found unresponsive by another inmate and not custodial staff. As a result of the incident, Mr. Escobar suffered multiple blunt force injuries to his head and neck. On November 18, 2020, Mr. Escobar succumbed to these injuries after being hospitalized for approximately one month. Mr. Escobar had a known history of depression, schizophrenia, suicidal ideations and prior suicide attempts. Mr. Escobar's suicide attempt was initially reported as a "fall" but later determined to be an intentional jump. Mr. Escobar informed hospital staff that he had intended to end his own life by jumping off his bed headfirst without extending his hands. Mr. Escobar was 41 years old at the time of his death.

79.    In 2020, Vincent Nelson committed suicide at MCJ. On December 18, 2020, Mr. Nelson was found hanging in his cell.  Mr. Nelson was transported to the LAC/USC Medical Center where he was diagnosed with an anoxic brain injury.  Four days later, Mr. Nelson succumbed to his injuries and died on December 22, 2020. Mr. Nelson had a history of depression and suicidal ideation.   Mr. Nelson was 27 years old at the time of his death.

80.    In 2021, Lorenzo Anguino committed suicide at MCJ by removing his tracheostomy tube.  Mr. Anguino had a history of suicide attempts and indeed attempted suicide three different times at MCJ; the first attempt was by cutting his wrists and the two other attempts were by removing his tracheostomy tube.  On January 7, 2021, inmates informed LASD custody staff that Mr. Anguino was

1  attempting suicide by removing his tracheostomy tube and inserting Q-tips into his

2  airway.  The very next day, Mr. Anguino once again removed his tracheostomy tube

3  and inserted Q-tips into his airway to commit suicide.  Mr. Anguino was pronounced

4  dead on January 8, 2021.  The mechanism of death was asphyxiation (i.e., choking)

5  and the manner of death was suicide.  Mr. Anguino was 27 years old at the time of his

6  death.

7      81.    In 2021, Mark Carrillo committed suicide at MCJ. Mr. Carrillo had been

8  housed at MCJ for a month prior to committing suicide.  During that month, Mr.

9  Carillo engaged in alarming behavior which caused him to be housed in a single-man

10  cell.  On January 23, 2021, Mr. Carillo was found hanging from a ligature that was

11  fastened to the bars of his cell door.[5]  The ligature Mr. Carillo created was made out

12  of a t-shirt and a sock that were tied together by a large knot.  Mr. Carillo was 38

13  years old at the time of his death.

14      82.    In 2021, Donry Bernabe committed suicide at LASD station jail.  On

15  February 16, 2021, Mr. Barnabe was arrested by LASD sheriff's deputies and booked

16  at the LASD Palmdale Station Jail.  Hours later, an inmate observed Mr. Bernabe

17  praying on his knees as he faced his cell wall.  Mr. Bernabe then found hanging by a

18  ligature tied to the telephone box inside his cell. Mr. Bernabe was 50 years old at the

19  time of his death.

20      83.    In 2021, Wilson Barrios committed suicide at MCJ. On February 27,

21  2021, Mr. Barrios was found hanging in his cell by a sheet tied to rail.[6] Mr. Barrios

22  was transported to the LAC/USC Medical Center where he was diagnosed with

23

24  _____

[5] Notably, the suicide was captured on surveillance video.  The surveillance camera captured Mr.
25  Carillo's hands and fingers fidgeting through the bars, appearing consistent with Mr. Carillo tying a
ligature to accomplish suicide by strangulation. To date, it remains unclear as to why LASD custody
26  staff and/or CHS medical staff failed to notice Mr. Carrillo's hands and fingers fastening the
ligature on the cell bars which served as the attachment points.
27  [6] This suicide attempt was *also* captured on surveillance video.  To date, it remains unclear as to
why LASD custody staff and/or CHS medical staff failed to notice Mr. Barrios' fastening the sheet
28  on the rail as he performed the act of strangulation *on video*.

COMPLAINT FOR DAMAGES

global brain damage from anoxia.  Three weeks following the suicide attempt, Mr. Barrios succumbed to his injuries and died on March 20, 2021.  Mr. Barrios had a history of suicide attempts as evidenced by the very visible self-harm wounds on his body.  It was further known to the LASD custody staff and CHS medical staff that Mr. Barrios was a victim of numerous altercations. In fact, Mr. Barrios was physically assaulted hours prior to his final suicide attempt.   Mr. Barrios was 26 years old at the time of his death.

84.     In 2021, Angel Sapien committed suicide at MCJ. On March 12, 2021, Mr. Sapien was found in his cell unresponsive, seated on his bunk with a ligature formed around his neck and tied to the jail cell's bunk bed frame.  The ligature was formed by tying plastic material together.  The plastic material was believed to be plastic bags.  Mr. Sapien was 34 years old at the time of his death.

85.     In 2021, Sam Do committed suicide at TTCF, specifically within the HOH Unit.[7] Mr. Do had been in the LASD's custody since January 2020.  On May 17, 2021, Mr. Do was found dead in his cell with a plastic bag over his head.  LASD custody staff provided Mr. Do with the plastic bag an hour prior to his death; the plastic bag contained Mr. Do's snack and medications.  Mr. Do was 43 years old at the time of his death.

86.     In 2021, Darlene Carlisle committed suicide at the LASD Lynwood Jail. Ms. Carlisle had a history of depression and suicide attempts.  On May 20, 2021, Ms. Carlisle was found in her cell with an elastic tied in a loop around her neck and with a sanitary towel lodged deeply into her airway.  A month prior, Ms. Carlisle had been taken off of Suicide Watch by CHS medical staff following a suicide attempt involving Ms. Carlisle cutting her wrists. Ms. Carlisle was 58 years old at the time of her death.

---

[7] Despite the fact that the "HOH Unit" is indeed the *High Observation* housing module for inmates who struggle with mental health issues, it is unclear why no LASD custody staffer nor CHS mental health staffer *observed* Mr. Do committing suicide by suffocating himself with plastic bag around his head.

87.     In 2021, Alejandro Esparza committed suicide at TTCF. Mr. Esparza had a history of hearing voices, paranoia, and suicidal ideations. Due to his severe mental health issues, Mr. Esparza was transferred from MCJ to TTCF, specifically within the "High Observation" housing module.  On May 21, 2021, Mr. Esparza notified the LASD custody staff and/or the CHS mental health staff about his suicidal ideations and even shared with them that he had previously attempted suicide with a towel around his neck.  Later that evening, and approximately from 11:27 p.m. to 11:47 p.m., Mr. Esparza forcefully banged his head against the wall of his single-man cell 61 times.[8]  The following morning Mr. Esparza was found unresponsive in his cell.  Mr. Esparza's forehead and nose bridge had visible swelling with purple skin discoloration.  His eye sockets also had visible bruising.  Mr. Esparza died of blunt force trauma to the head.  Mr. Esparza was only 23 years old at the time of his death.

88.     In 2021, Aaron Crawford committed suicide at TTCF.  More specifically, Mr. Crawford committed suicide on December 27, 2021 *within* the Mental Evaluation & Suicide Watch Unit.  Mr. Crawford had been in the LASD custody since July 4, 2018.  Mr. Crawford had been in the Suicide Watch unit for *eight whole months* from April 29, 2021 until finally ending his life on December 27, 2021.  The LASC custody staff and CHS mental health staff were well aware that Mr. Crawford was *acutely* suicidal and would have been better served at a psychiatric hospital rather than a correctional facility.  Indeed, Mr. Crawford accomplished suicide on December 27, 2021 by ingesting a lethal amount of prescription drugs he had hoarded during pill call; these pills included quetiapine, buspirone, diphenhydramine, sertraline.  Notably, the LASD custody staff and CHS mental health staff knew that Mr. Crawford had attempted suicide on numerous occasions while in the LASD custody, including attempts by way of cutting his arms and

---

[8] Video surveillance showed Mr. Esparza forcefully banging his head against the cell wall over the span of 10 minutes. LASD Sgt. Shrout counted "61 head bangs" when reviewing the footage.  Here too it remains unclear how a 23-year-old inmate could forcefully bang his head against a wall in his jail cell 61 times over a span of 10 minutes within the *High Observation* unit.

1  hoarding pills.  Handwritten suicide notes were found in his cell.  Mr. Crawford was
2  36 years old at the time of his death.

3      89.    In 2022, Winford Carter, a 36-year-old male, was found unresponsive
4  and face down in his cell approximately one week after being booked at TTCF. Upon
5  booking, Mr. Carter was placed alone in a cell in the High Observation Housing Unit
6  at Twin Towers due to his history of mental illness. Mr. Carter was diagnosed with
7  schizoaffective disorder and paranoid schizophrenia. According to the Deputy
8  Medical Examiner and autopsy report, the "stress of being placed in custody
9  exacerbated [Mr. Carter's] mental condition." At the time of his death, Mr. Carter's
10 cell was observed to be flooded with approximately two (2) inches of "murky" water
11 which contained fecal matter. In addition to this, the inside of Mr. Carter's cell had
12 smeared fecal matter on the walls as well as "indistinguishable writing." The
13 COUNTY's Medical Examiner determined Mr. Carter's mechanism of death was
14 asphyxia after ingesting a large bolus of paper which completely obstructed his
15 airways.

16     90.    In 2022, Joseph Posard committed suicide in the hospital dormitory of
17 the Twin Towers Correctional Facility.  Mr. Posard was housed alone in a hospital
18 dormitory that contained suicide hazards, including electrical cords and showers
19 heads.  Mr. Posard committed suicide on December 10, 2023 by way of strangulation.
20 Indeed, the LASD custody staff and CHS medical staff were aware of Mr. Posard's
21 suicidal propensities given his three-month incarceration at the COUNTY Jails just
22 six weeks prior, including his placement on Suicide Watch.

23     91.    In 2023, Massimo Barbagallo committed suicide while in-custody at the
24 COUNTY Jail by climbing up a wall and jumping off headfirst. Mr. Barbagallo's
25 jump was approximately 25 feet from the ground. As a result of the incident, Mr.
26 Barbagallo suffered multiple blunt force injuries to his head, neck, torso and
27 extremities. He succumbed to these injuries and died on January 16, 2023. The entire
28 incident was captured on video surveillance. On the date of his death, Mr. Barbagallo

was issued a pass to get a book at the inmate services area. Mr. Barbagallo had been incarcerated for nearly three and a half years prior to his death.

92.     In 2023, Eric Wright committed suicide at the LASD jail.  On March 22, 2023, Mr. Wright was found hanging in his cell on.  He was then transported to Cedars Sina Hospital where he was diagnosed with an anoxic brain injury.  Mr. Wright succumbed to his injuries and died on March 25, 2023.

93.     In 2023, a 22-year-old Latino man committed suicide at TTCF.  On September 29, 2023, the 22-year-old inmate committed suicide while the floor deputies, who were responsible for conducting safety checks, watched YouTube videos instead of performing their duties.  That day, the floor deputies failed to perform three mandatory welfare checks around the time that the 22-year-old inmate committed suicide.[9]  Notably, the inmate had previously tried to commit suicide at the LASD jails.

**C. The County Defendants' Indifference to the Constitutional Violations and Failures Permeating the COUNTY Jails Affecting Inmates with Mental Health Issues.**

94.     Defendants SHERIFF VILLANUEVA and SHERIFF LUNA, through their supervision of the COUNTY's medical staff, were responsible for the provision of medical and mental health services at the COUNTY Jails, and as such, were responsible for the following at the COUNTY Jails:

a.   Staffing for the jail's medical and mental health units;

b.  Administrative structure, medical direction and operational oversight for the medical and mental health units;

c.  Oversight of the day-to-day operations of the health services programs at the jail;

---

[9] *See* "A Man Died By Suicide at Twin Towers While Guards Allegedly Watched Videos" (Los Angeles Public Access, October 21, 2023), available at  https://lapublicpress.org/2023/10/a-man-hanged-himself-at-twin-towers-so-lasd-restricted-video-streaming/

**COMPLAINT FOR DAMAGES**

d.   Design and implementation of a suicide prevention program, including the related policies and procedures to fully and safely carry out such program;

e.   Development, implementation and revision policies and procedures which relate to the overall provision of mental health and medical services, including the operational aspects of such services and compliance with regulations and statutes;

f.   Development, implementation and revision policies, procedures and practices for the training of custody, medical and mental health staff at the jail;

g.   Identifying of all unsafe or unhealthy conditions within the jail facilities related to the provision of medical and mental health services, and proposing of corrective measures of such conditions in a timely manner;

h.   Provide continuous training to detention staff regarding the screening of inmates, identification of mentally ill inmates, risk recognition, and suicide prevention.

95.   Defendants COUNTY, LASD, SHERIFF VILLANUEVA, SHERIFF LUNA, and the COUNTY custody, medical and mental health staff, and each of them, had been on notice for years that their provision of medical and mental health treatment to inmates at the COUNTY Jails was inadequate and resulted in needless harm and death.

96.   By the time that decedent Joseph Posard was moved to TTCF, and housed alone within the hospital dormitory, SHERIFF LUNA and the COUNTY custody, medical and mental health staff, and each of them, understood the dormitory where Mr. Posard was housed on December 10, 2022 was not suitable for an inmate who exhibited clear signs of psychosis and suicidal ideations because the jail cell contained suicide hazards and was unreasonably dangerous for housing inmates with identified mental health concerns.

**COMPLAINT FOR DAMAGES**

97.     Defendants COUNTY, LASD, LACDHS, SHERIFF LUNA, and the COUNTY custody, medical and mental health staff, and each of them, knew that placing decedent Joseph Posard in such hospital dormitory would pose a substantial risk of death. Prior to the death of decedent Joseph Posard, other persons in the custody of the COUNTY and supervised and cared for by the COUNTY medical and custody staff had attempted suicide by similar, if not identical, means during their incarcerations at the COUNTY Jails.

98.     Defendants COUNTY, LASD, LACDHS, SHERIFF VILLANUEVA and SHERIFF LUNA, and the COUNTY custody, medical and mental health staff, and each of them, were repeatedly put on notice of the great dangers which existed within the COUNTY Jails through the long history of in-custody deaths; the federal civil rights action *United States of America v. County of Los Angeles and Los Angeles County Sheriff Jim McDonnell*, United States District Court, Central District of California, Case No. 15-5903 targeting the COUNTY Jails' custody and medical staff's deliberate indifference to the safety and protection of inmates, particularly those who were at risk of suicide; the warnings from neutrally-selected experts regarding the COUNTY Jails' custody and medical staff's failures amounting to constitutional violations; the U.S. Department of Justice's request for federal court oversight of comprehensive reforms designed to prevent and respond more effectively to suicides and self-inflicted injuries; and through a voluntarily entered Settlement Agreement which required that the COUNTY OF LOS ANGELES and the LOS ANGELES COUNTY SHERIFF'S DEPARTMENT remedy all of the deficiencies addressed in the *United States of America v. County of Los Angeles and Los Angeles County Sheriff Jim McDonnell* federal civil rights action.

99.     Based on the aforementioned, Defendants COUNTY, LASD, LACDHS, SHERIFF VILLANUEVA, SHERIFF LUNA and the COUNTY custody, medical and mental health staff, and each of them, knew of the dangers that posed a risk to decedent Joseph Posard's safety, yet disregarded these dangers resulting in his death.

# VII.

## PUNITIVE/EXEMPLARY DAMAGES ALLEGATIONS

### (Against individual Defendants SHERIFF ALEX VILLANUEVA, SHERIFF ROBERT LUNA and DOES 1-10)

100.   Each Defendants' conduct as alleged herein was done with reckless disregard for human life, oppression, and malice.

101.   Long before Joseph Posard's death, Defendants SHERIFF VILLANUEVA, SHERIFF LUNA and DOES 1 through 10 knew that there existed a great indifference to the safety and protection of the inmates who were in the government's custody within the COUNTY Jails.

102.   Defendants SHERIFF VILLANUEVA, SHERIFF LUNA and DOES 1 through 10 were repeatedly put on notice of the great dangers which existed within the COUNTY Jails through the long history of in-custody deaths, as detailed in Section VI above.

103.   Despite this long history of complete disregard to inmate safety and protection, Defendants SHERIFF VILLANUEVA and SHERIFF LUNA have deliberately failed to take even modest actions to prevent in-custody deaths at the COUNTY Jails which have for a very long time been infested with endemic, ongoing and unabated risks of injury or death to inmates.

104.   The Defendant officers, and each of them, acted with malice and oppression and with a conscious disregard for Plaintiffs' rights, making the individual defendants, including DOES 1-10, liable for punitive damages.

# VIII.

## FIRST CAUSE OF ACTION

### Failure to Protect from Harm,

### Violation of the Fourteenth Amendment to the United States Constitution

### (Survival Action – 42 U.S.C. § 1983)

### By Plaintiff Estate of Joseph Posard As Against DOES 1 through 10

32

105.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

106.   Defendants COUNTY, LASD and DOES 1 through 10 were on notice that their deficient policies, procedures, and practices alleged herein created substantial risk of serious harm to an inmate in decedent Joseph Posard's position.

107.   Each Defendant could have taken action to prevent unnecessary harm to decedent Joseph Posard but refused or failed to do so.

108.   By policy, procedure, and practice, Defendants COUNTY, LASD and DOES 1 through 10 deliberately disregarded the hazards and risks posed to persons incarcerated at the TTCF, as alleged above.  Defendants failed to take any reasonable steps to mitigate the obvious and well-known risks of harm that was attendant to housing decedent Joseph Posard at TTCF.

109.   Indeed, on December 10, 2022, Defendants DOES 1 through 10, and each of them, made the intentional decision of refusing to place Joseph Posard in a safety cell or a cell free of suicide hazard. Defendants DOES 1 through 10, and each of them, further made the intentional decision of placing Joseph Posard in a dormitory which was full of suicide hazards and weapons of death for a person who is suicidal.

110.   Clearly, given that Joseph Posard was suicidal, placing him in a dormitory filled with suicide hazards put Joseph Posard at substantial risk of suffering serious harm to which Defendants DOES 1 through 10, and each of them, did not take reasonable measures to reduce such risk even though any reasonable person would have appreciated the high risks involved in the situation. By failing to take such reasonable measures, it was obvious and foreseeable that Joseph Posard would commit suicide. Therefore, by not taking such measures, Defendants DOES 1 through 10, and each of them, caused Joseph Posard's death.

111.   Defendants COUNTY, LASD and DOES 1 through 10 were on notice that their policies, procedures, and practices for monitoring inmates at the COUNTY

Jails, including TTCF, were inadequate and gave rise to a substantial risk of serious harm.

112.   Defendants, including SHERIFF VILLANUEVA, SHERIFF LUNA and DOES  8 through 10, knew that deputies routinely failed to conduct required welfare and safety checks at the COUNTY Jails, including TTCF, and failed to take sufficient actions to correct this problem and ensure that necessary checks were performed.

113.   Defendants, including SHERIFF VILLANUEVA and SHERIFF LUNA and DOES 8 through 10, failed to take corrective action, discipline, or remove the command staff at the COUNTY Jails, including TTCF, who, upon information and belief, directed the deputies to falsify safety check logs and violate the COUNTY's safety check policies. Defendants SHERIFF VILLANUEVA, SHERIFF LUNA and DOES 8 through 10 ratified their actions, and the practices used under their watch.

114.   Defendants, including SHERIFF VILLANUEVA, SHERIFF LUNA and DOES 8 through 10, failed to properly train and supervise LASD custody, medical and mental health staff regarding policies, procedures, and practices necessary for the protection of inmates from risks and hazards existing within the COUNTY Jails, including TTCF.

115.   Defendants, including SHERIFF VILLANUEVA, SHERIFF LUNA and DOES 8 through 10, failed to correct their policies, procedures, and practices despite notice of significant and dangerous problems evidences deliberate indifference to the inmates in their care.

116.   Defendants, including SHERIFF VILLANUEVA, SHERIFF LUNA and DOES 8 through 10, ratified Defendants DOES's actions and inactions amounting to constitutional violations.

117.   Defendants DOES 1 through 10's failure to conduct the required safety check of decedent Joseph Posard's housing unit on the date of his death evidences deliberate indifference to the risk of harm to decedent Joseph Posard.

///

118.   Defendants SHERIFF VILLANUEVA, SHERIFF LUNA and DOES 8 through 10 ratified Defendants DOES's failure to conduct safety checks and falsification of logs.

119.   As a direct and proximate result of Defendants' conduct, the civil right of Joseph Posard, as protected by the Fourteenth Amendment of the United States Constitution were violated.  Further, decedent Joseph Posard experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

120.   Defendants subjected decedent Joseph Posard to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

121.   As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Decedent, through Plaintiffs herein, sustained injuries and damages.

122.   The conduct of Defendants entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not seek punitive damages against Defendants COUNTY.

123.   Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

**IX.**

**SECOND CAUSE OF ACTION**

**Failure to Provide Medical Care,**

**Violation of the Fourteenth Amendment to the United States Constitution**

**(Survival Action – 42 U.S.C. § 1983)**

**By Plaintiff Estate of Joseph Posard As Against DOES 1 through 10**

124.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

///

125.   By the actions and omissions described above, Defendants DOES 1 through 10, as alleged herein, violated 42 U.S.C. § 1983, depriving decedent Joseph Posard, through Plaintiffs herein, of the following clearly established and well-settled constitutional rights protected by the Fourteenth Amendment to the United States Constitution: Decedent's right to be free from deliberate indifference to Joseph Posard's serious medical and mental health needs while in custody as a pretrial detainee as secured by the Fourteenth Amendment.

126.   By the actions and omissions described above, Defendants DOES 1 through 10, as alleged herein, including but not limited to their failure to provide decedent Joseph Posard with appropriate emergency medical and mental health care, along with the acts and/or omissions of Defendants in failing to train, supervise, and/or promulgate appropriate policies and procedures to provide emergency medical and mental health care and life saving care to persons in their custody, constituted deliberate indifference to Joseph Posard's serious medical and mental health needs, health, and safety.

127.   Indeed, on December 8, 9 and 10, 2022, Defendants DOES 1 through 10, and each of them, made the intentional decision of to deny Joseph Posard the proper medical for his suicidal symptoms. Any reasonable person in Defendants DOES 1 through 10's position would have known that Joseph Posard was suicidal.

128.   Instead of providing Joseph Posard with the medical care he needed, Defendants DOES 1 through 10, and each of them, denied Joseph Posard medical care and put him in substantial risk of suffering serious harm.

129.   Clearly, given that Joseph Posard was suicidal, Defendants DOES 1 through 10, and each of them, did not take reasonable measures to reduce such risk even though any reasonable person would have appreciated the high risks involved in the situation. By failing to take such reasonable measures, it was obvious and foreseeable that Joseph Posard would commit suicide. Therefore, by not taking such measures, Defendants DOES 1 through 10, and each of them, caused Joseph Posard's

1   death.

2       130.   As a direct and proximate result of Defendants' conduct, the civil rights

3   of Joseph Posard, as protected by the Fourteenth Amendment of the United States

4   Constitution were violated.  Further, decedent Joseph Posard experienced physical

5   pain, severe emotional distress, and mental anguish, as well as loss of his life and

6   other damages alleged herein.

7       131.   Defendants subjected Decedent to their wrongful conduct, depriving

8   Decedent of rights described herein, knowingly, maliciously, and with conscious and

9   reckless disregard for whether the rights and safety of Decedent and others would be

10  violated by their acts and/or omissions.

11      132.   As a direct and proximate result of Defendants' acts and/or omissions as

12  set forth above, Decedent, through Plaintiff herein, sustained injuries and damages.

13      133.   The conduct of Defendants entitles Plaintiff to punitive damages and

14  penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not

15  seek punitive damages against Defendants COUNTY.

16      134.   Plaintiff is also entitled to reasonable costs and attorneys' fees under 42

17  U.S.C. § 1988, and other applicable United States and California codes and laws.

18                                    **X.**

19                    **THIRD CAUSE OF ACTION**

20       **Deprivation of the Right to Familial Relationship with Decedent,**

21    **Violation of the Fourteenth Amendment to the United States Constitution**

22                         **(42 U.S.C. § 1983)**

23            **By Plaintiffs A.P., E.P. and ELLEN POSARD**

24                  **As Against DOES 1 through 10**

25      135.   Plaintiffs reallege and incorporate herein by reference each of the

26  preceding paragraphs of this complaint, and any subsequent paragraphs.

27      136.   The aforementioned acts and/or omissions of Defendants DOES 1

28  through 10 in being deliberately indifferent to decedent Joseph Posard's protection,

safety, and serious medical and mental health needs, violating decedent Joseph Posard's constitutional rights, and their failure to train, supervise, and/or take other appropriate measures to prevent the acts and/or omissions that caused the untimely and wrongful death of Joseph Posard deprived Plaintiffs A.P., E.P. and ELLEN POSARD of their liberty interests in the parent-child relationship in violation of their substantive due process rights as defined by the Fourteenth Amendment of the Constitution.

137.   All of the acts of Defendants DOES 1 through 10 and the persons involved were done under color of state law.

138.   The acts and omissions of each Defendant deprived Plaintiffs A.P., E.P. and ELLEN POSARD of rights, privileges, and immunities secured by the Constitution and laws of the United States, including but not limited to the Fourteenth Amendment by, among other things, depriving Plaintiff of her rights to a parent-child relationship with decedent Joseph Posard without due process of law by their deliberate indifference in denying Joseph Posard protection and safety while incarcerated at TTCF and access to medical care while suffering a medical emergency at TTCF.

139.   The conduct of Defendants DOES 1 through 10, and each of them, shocks the conscience because placing Joseph Posard in such a despicable condition, ignoring his medical condition, and refusing to provide medical was done with a purpose to harm unrelated to any law enforcement purpose or done with deliberate indifference. The conduct shocks the conscience in violation of the Fourteenth Amendment.

140.   Defendants DOES 1 through 10 and the other involved agents and employees acted pursuant to expressly adopted official policies or longstanding practices or customs of the COUNTY and LASD. These include policies and longstanding practices or customs of failing to provide persons in pretrial custody who are experiencing medical emergencies access to medical care as stated above and

1   incorporated herein.

2       141.   In addition, the training policies of the COUNTY and LASD were not
3   adequate to train its deputies, agents and employees to handle the usual and recurring
4   situations with which they must deal with, including but not limited to encounters
5   with individuals in pretrial custody who are experiencing medical emergencies. These
6   Defendants and each of them knew that its failure to adequately train its COUNTY
7   custody, medical and mental health staff, including other agents and employees, to
8   interact with individuals suffering from medical emergencies made it highly
9   predictable that its custody, medical and mental health staff would engage in conduct
10  that would deprive persons such as decedent Joseph Posard, and thus Plaintiffs A.P.,
11  E.P., and ELLEN POSARD, of their rights. These Defendants were thus deliberately
12  indifferent to the obvious consequences of their failure to train their deputies, agents
13  and employees adequately.

14      142.   Defendants COUNTY and LASD's official policies and/or longstanding
15  practices or customs, including but not limited to its training policies, caused the
16  deprivation of the constitutional rights of Plaintiffs A.P., E.P. and ELLEN POSARD
17  and decedent Joseph Posard by each individual Defendant's official policies and/or
18  longstanding practices or customs are so closely related to Joseph Posard's injuries
19  and death and thus the deprivation of the rights of Plaintiffs as to be the moving force
20  causing those injuries.

21      143.   Defendants SHERIFF VILLANUEVA and SHERIFF LUNA, final
22  policymakers for the COUNTY and LASD, ratified the actions and omissions of
23  Defendants DOES 1 through 10, all of whom were custody, medical and mental
24  health staff at the COUNTY Jails, including TTCF, in that they had knowledge of and
25  made a deliberate choice to approve their unlawful acts and omissions.

26      144.   As a direct and proximate result of Defendants' conduct, the civil rights
27  of Joseph Posard, as protected by the Fourteenth Amendment of the United States
28  Constitution were violated.  Further, decedent Joseph Posard experienced physical

**COMPLAINT FOR DAMAGES**

1   pain, severe emotional distress, and mental anguish, as well as loss of his life and

2   other damages alleged herein.

3        145.   Defendants subjected Decedent to their wrongful conduct, depriving

4   Decedent of rights described herein, knowingly, maliciously, and with conscious and

5   reckless disregard for whether the rights and safety of Decedent and others would be

6   violated by their acts and/or omissions.

7        146.   As a direct and proximate result of Defendants' acts and/or omissions as

8   set forth above, Plaintiffs sustained injuries and damages.

9        147.   The conduct of Defendants entitles Plaintiffs to punitive damages and

10   penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiffs do not

11   seek punitive damages against Defendants COUNTY.

12        148.   Plaintiffs are also entitled to reasonable costs and attorneys' fees under

13   42 U.S.C. § 1988, and other applicable United States and California codes and laws.

14   **XI.**

15   **<u>FOURTH CAUSE OF ACTION</u>**

16   **Municipal Policies, Customs, Practices Causing Constitutional Violations**

17   **(*Monell* - 42 U.S.C. § 1983)**

18   **By Plaintiff Estate of Joseph Posard As Against Defendants COUNTY OF LOS**

19   **ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT and LOS**

20   **ANGELES COUNTY DEPARTMENT OF HEALTH SERVICES**

21        149.   Plaintiffs reallege and incorporate herein by reference each of the

22   preceding paragraphs of this complaint, and any subsequent paragraphs.

23        150.   At all times relevant hereto, the COUNTY custody, medical and mental

24   health staff were required to adhere to and enforce the following policy and

25   procedures:

26        a.   All COUNTY custody, medical and mental health staff must consider

27             suicide prevention as one of the highest priorities of service within the

28             correctional setting;

b.    All must work together to identify inmates at risk for suicide;

c.    All COUNTY custody, medical and mental health staff will have an outlined program for responding to suicidal individuals;

d.    All COUNTY custody, medical and mental health staff must learn about an inmates' high-risk periods immediately upon admission to a facility;

e.    All COUNTY custody, medical and mental health staff must learn about an inmates' high-risk periods after adjudication, when the inmate is returned to a facility from court;

f.    All COUNTY custody, medical and mental health staff must learn about an inmate's high-risk periods following the receipt of bad news regarding self or family;

g.    All COUNTY custody, medical and mental health staff must learn about an inmates' high-risk periods after suffering from some type or form of humiliation, rejection or abuse;

h.    All COUNTY custody, medical and mental health staff will review information of newly arriving inmates in this institution concerning issues related to suicide;

i.    All COUNTY custody, medical and mental health staff conducting the intake personal screen will be continuously alert to suicidal behavior;

j.    All COUNTY custody, medical and mental health staff will train their staff who work with inmates to recognize verbal and behavioral cues that indicate the potential for suicide;

k.    All COUNTY custody, medical and mental health staff who recognize an inmate as being potentially suicidal are to request immediate evaluation of the patient;

l.    All assessments of potentially suicidal inmates are to be conducted by qualified mental health professionals, trained to determine an inmate's level of suicide risk;

**COMPLAINT FOR DAMAGES**

m.  Inmates who have been determined to be suicidal should be placed/housed according to institutional policy and procedures for the monitoring of such individuals within the correctional setting;

n.  Regular documented supervision should be maintained;

o.  Inmates who have been determined to be suicidal should be placed/bound in the appropriate acute mental health housing;

p.  Suicidal inmates should not be housed alone, or left alone, unless constant supervision can be maintained. If constant supervision cannot be provided when needed, the inmate should be housed with another resident or in a dormitory and monitored by video camera by correctional staff;

q.  The rooms should be as nearly suicide proof as possible and constant supervision by a staff member is preferable;

r.  The procedures for referring potentially suicidal inmates and attempted suicides to mental health care providers or facilities should be clearly outlined;

s.  Clear, current and accurate information regarding an inmate must be communicated between health care personnel and correctional personnel pursuant to the procedures of communication;

t.  The intervention plan on how to handle a suicide that is in progress, including appropriate first aid measures, should be clearly outlined;

u.  Procedures for notifying correctional administrators, outside authorities and family members of potential, attempted or completed suicides will be in place;

v.  Procedures for documenting the identification and monitoring of potential or attempted suicides will be detailed, as well as procedures for reporting a completed suicide;

**COMPLAINT FOR DAMAGES**

w.   The suicide plan should specify the procedure for medical administrative review if a suicide does occur; and

x.   A formal psychiatric/suicide review should take place following all successful suicides, or significant suicide attempts.

151.   The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, as well as other employees or officers employed by or acting on behalf of the Defendants COUNTY, LASD, and LACDHS on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of Defendants COUNTY, LASD, and LACDHS, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendants COUNTY, LASD, and LACDHS:

a.   To deny pretrial detainees and other inmates access to timely, appropriate, competent, and necessary care for serious medical and mental health needs, requiring such inmates in crisis to remain untreated in jail instead of providing for their emergency medical needs;

b.   To allow and encourage deputies doing regular cell checks on inmates, including inmates housed in safety cells and administrative segregation cells, to fail to document their actual observations of the inmate's condition and status, in violation of the COUNTY's written policies and state law;

c.   To allow and encourage inadequate and incompetent medical and mental health care for jail inmates and arrestees;

d.   To hire, retain and contract for obviously inadequate medical and mental health care for jail inmates and arrestees, including creating financial incentives for custody, medical and mental health staff not to send inmates with emergency medical needs to a hospital;

e.   To allow, encourage, and require medical and mental health care staff, including licensed vocational nurses and registered nurses, to work

**COMPLAINT FOR DAMAGES**

outside their legal scope of practice and without appropriate supervision;

f.     To fail to train custody staff that medical and mental health care staff, including licensed vocational nurses, are not competent to assess or decide inmates' medical conditions, medical needs, or whether the inmate should be permitted to remain in the jail versus being sent to a hospital;

g.     To allow, encourage, and require unlicensed, incompetent, inadequately trained and/or inadequately supervised medical and mental health care staff to assess inmates' medical condition, needs, and treatment, including to decide whether or not to provide inmates with necessary emergency care and hospitalization, including psychiatric hospitalization;

h.     To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in medical and mental health crisis;

i.     To cover up violations of constitutional rights by any or all of the following:

    i.     By failing to properly investigate and/or evaluate incidents of violations of rights, including by unconstitutional medical and mental health care at the jail;

    ii.    By ignoring and/or failing to properly and adequately investigate and/or investigate and discipline unconstitutional or unlawful conduct by custody, medical and mental health staff;

    iii.   By turning a blind eye to custody, medical and mental health staff who direct, aid, and/or assist with the distribution of hazards, including illicit drugs, into the COUNTY Jails; and

    iv.    By allowing, tolerating, and/or encouraging custody, medical and mental health staff to: fail to file complete and accurate reports;

**COMPLAINT FOR DAMAGES**

file false reports; make false statements; and/or obstruct or interfere with investigations of unconstitutional or unlawful conduct by withholding and/or concealing material information;

j.   To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers, COUNTY personnel, custody, medical and mental health staff at the jail whereby an officer or member of the LASD custody and/or CHS medical/mental health staff does not provide adverse information against a fellow officer, or member;

k.   To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (j) above, with deliberate indifference to the rights and safety of pretrial detainees, such as Decedent, and in the face of an obvious need for such policies, procedures, and training programs.

152.   The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, as well as other officers employed by or acting on behalf of the COUNTY, LASD, and LACDHS, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of the COUNTY, LASD, and LACDHS, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for the COUNTY, LASD, and LACDHS, including SHERIFF VILLANUEVA and SHERIFF LUNA:

a.   To fail to properly and adequately hire, train, supervise, and monitor custody, medical and mental health staff at the jails;

b.   To fail to use appropriate and generally accepted law enforcement procedures for handling persons in medical and mental health crisis;

c.   To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in medical and mental health crisis;

d.    To cover up violations of constitutional rights by any or all of the following:

    i.    By failing to properly investigate and/or evaluate complaints or incidents of handling of persons in medical and mental health crisis;

    ii.    By ignoring and/or failing to properly and adequately investigate and/or discipline unconstitutional or unlawful law enforcement activity; and

    iii.    By allowing, tolerating, and/or encouraging law enforcement officers to: fail to file complete and accurate reports; file false reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful law enforcement conduct by withholding and/or concealing material information;

e.    To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers whereby an officer does not provide adverse information against a fellow law enforcement officer;

f.    To allow, tolerate, and/or encourage a "code of silence" among custody, medical and mental health staff at the COUNTY jails whereby custody, medical and mental health staff does not provide adverse information against one another;

g.    To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (f) above, with deliberate indifference to the rights and safety of pretrial detainees, such as Decedent, and in the face of an obvious need for such policies, procedures, and training programs.

**COMPLAINT FOR DAMAGES**

153.   Defendants COUNTY, LASD, and LACDHS, through their employees and agents, and through their policy-making supervisors, SHERIFF VILLANUEVA, SHERIFF LUNA and DOES 8 through 10, failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants DOES 1 through 10, and other COUNTY, LASD, and LACDHS personnel, with deliberate indifference to the constitutional rights of decedent Joseph Posard, Plaintiffs and others in similar positions, as described above, and therefore, those rights thereby violated.

154.   The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, and other COUNTY custody, medical and mental health staff, as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY, LASD, and LACDHS, including Defendants SHERIFF VILLANUEVA, SHERIFF LUNA and DOES 8 through 10. Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to the authorized policymakers within the COUNTY, LASD, and LACDHS, and that such policymakers have direct knowledge of the fact that the death of Joseph Posard was the result of deliberate indifference to his rights to be protected and safe while in the custody of the COUNTY/LASD, and his rights to have access to medical care when suffering a medical emergency.  Notwithstanding this knowledge, the authorized policymakers within the COUNTY, LASD, and LACDHS have approved of the conduct and decisions of Defendants DOES 1 through 10 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of Joseph Posard. By so doing, the authorized policymakers within the COUNTY, LASD, and LACDHS have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants SHERIFF VILLANUEVA, SHERIFF LUNA and DOES 8 through 10, and other policy-making

officers for the COUNTY, LASD, and LACDHS were and are aware of a pattern of misconduct and injury caused by COUNTY custody, medical and mental health staff similar to the conduct of Defendants described herein, but failed to discipline culpable custody, medical and mental health staff and failed to institute new procedures and policy within the COUNTY, LASD, and LACDHS.

155.   The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants COUNTY, LASD, and LACDHS were a moving force and/or a proximate cause of the deprivations of decedent Jospeh Posard's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983. Defendants subjected decedent Joseph Posard to their wrongful conduct, depriving decedent Joseph Posard of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of decedent Joseph Posard, Plaintiffs and others would be violated by their acts and/or omissions.

156.   As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants COUNTY, LASD, and LACDHS, as described above, decedent Joseph Posard suffered serious injuries and death, Plaintiff is entitled to damages, penalties, costs, and attorneys' fees against Defendants COUNTY and LASD.

## XII.

## FIFTH CAUSE OF ACTION

**Supervisory Liability Causing Constitutional Violations,**

**(Failure to Properly Train, Supervise and Discipline, 42 U.S.C. § 1983)**

**By Plaintiff Estate of Joseph Posard As Against Defendants SHERIFF**

**VILLANUEVA, SHERIFF LUNA and DOES 7 through 10**

157.   Plaintiffs reallege and incorporate herein by reference each of the

preceding paragraphs of this complaint, and any subsequent paragraphs.

158.   At all material times, SHERIFF VILLANUEVA, SHERIFF LUNA and DOES 8 through 10 had the duty and responsibility to constitutionally hire, train, instruct, monitor, supervise, evaluate, investigate, staff, and discipline the other Defendants employed by their respective agencies in this matter, as well as all employees and agents of the COUNTY and LASD.

159.   Defendants SHERIFF VILLANUEVA, SHERIFF LUNA and DOES 8 through 10 failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline the respective employees of their agencies, including Defendants DOES 1 through 10, and other COUNTY and LASD personnel, with deliberate indifference to Plaintiffs', decedent Joseph Posard's, and others' constitutional rights, which were thereby violated as described above.

160.   As supervisors, Defendants SHERIFF VILLANUEVA, SHERIFF LUNA and DOES 8 through 10 each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights to safety and protections while incarcerated at TTCF and the rights to the serious medical and mental health needs of decedent Joseph Posard. Each of these supervising Defendants either directed his or her subordinates in conduct that violated Decedent's rights, or set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive decedent Joseph Posard of rights, or knew his or her subordinates were engaging in acts likely to deprive decedent Joseph Posard of rights and failed to act to prevent his or her subordinate from engaging in such conduct, or disregarded the consequence of a known or obvious training deficiency that he or she must have known would cause subordinates to violate decedent Joseph Posard's rights, and in fact did cause the violation of decedent Joseph Posard's rights. (*See*, Ninth Circuit Model Civil Jury Instruction 9.4). Furthermore, each of these supervising Defendants

**COMPLAINT FOR DAMAGES**

1    is liable in their failures to intervene in their subordinates' apparent violations of

2    decedent Joseph Posard' rights.

3        161.   Although Defendant SHERIFF VILLANUEVA was out of office by the

4    time Joseph Posard tragically passed away, Defendant SHERIFF VILLANUEVA

5    was still in office in July of 2022 when Joseph Posard was previously in COUNTY

6    custody. Even then, Defendant SHERIFF VILLANUEVA's inaction in the training,

7    supervision, or control of his subordinates was giving rise to many deaths in

8    individuals in COUNTY custody. Clearly, Defendant SHERIFF VILLANUEVA was

9    acquiescent in the many constitutional deprivations and his conduct that showed a

10   reckless or callous indifference to the rights of inmates in COUNTY custody.

11       162.   The unconstitutional customs, policies, practices, and/or procedures of

12   Defendants COUNTY and LASD, as stated herein, were directed, encouraged,

13   allowed, and/or ratified by policymaking officers for Defendants COUNTY and

14   LASD, including Defendants SHERIFF VILLANUEVA, SHERIFF LUNA and

15   DOES 8 through 10, respectively, with deliberate indifference to Plaintiff's, decedent

16   Joseph Posard's, and others' constitutional rights, which were thereby violated as

17   described above.

18       163.   The unconstitutional actions and/or omissions of Defendants DOES 1

19   through 10, and other COUNTY and LASD personnel, as described above, were

20   approved, tolerated, and/or ratified by policymaking officers for the COUNTY and

21   LASD, including Defendants SHERIFF VILLANUEVA, SHERIFF LUNA and

22   DOES 8 through 10. Plaintiff is informed and believes and thereon alleges that the

23   details of this incident have been revealed to Defendants SHERIFF VILLANUEVA,

24   SHERIFF LUNA and DOES 8 through 10 and that such Defendant-policymakers

25   have direct knowledge of the fact that the death of decedent Joseph Posard was not

26   justified or necessary, but represented deliberate indifference to his rights to be

27   protected and safe while in the COUNTY's custody and his rights to his serious

28   medical and mental health needs, as set forth above. Notwithstanding this knowledge,

on information and belief, Defendants SHERIFF VILLANUEVA, SHERIFF LUNA and DOES 8 through 10 have approved and ratified of the conduct and decisions of Defendants DOES 1 through 10 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of Joseph Posard. By so doing, Defendants SHERIFF VILLANUEVA, SHERIFF LUNA and DOES 8 through 10 have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants SHERIFF VILLANUEVA, SHERIFF LUNA and DOES 8 through 10 and other policymaking officers for the COUNTY and LASD were and are aware of a pattern of misconduct and injury, and a code of silence, caused by COUNTY and LASD custody, medical and mental health staff personnel similar to the conduct of Defendants described herein, but failed to discipline culpable law enforcement officers and employees and failed to institute new procedures and policy within the COUNTY and LASD.

164.    The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants SHERIFF VILLANUEVA, SHERIFF LUNA and DOES 8 through 10 were a moving force and/or a proximate cause of the deprivations of decedent Joseph Posard's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983, as more fully set forth above.

165.    Defendants subjected decedent Joseph Posard to their wrongful conduct, depriving decedent Joseph Posard of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of decedent Joseph Posard and others would be violated by their acts and/or omissions.
///

166.   As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants SHERIFF VILLANUEVA, SHERIFF LUNA and DOES 8 through 10 as described above, Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorneys' fees.

## XIII.

### SIXTH CAUSE OF ACTION

**Negligence – Wrongful Death**

**Plaintiffs A.P. and E.P. As Against All Defendants**

167.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

168.   At all times, Defendants DOES 1 through 10 owed Plaintiffs and decedent Joseph Posard the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

169.   At all times, these Defendants owed Plaintiffs and decedent Joseph Posard the duty to act with reasonable care.

170.   These general duties of reasonable care and due care owed to Plaintiffs and decedent Joseph Posard by these Defendants include but are not limited to the following specific obligations:

a.    To properly identify symptoms of suicide;

b.    To properly take precautions in housing and confining an inmate who has symptoms of suicide;

c.    To house and confine a suicidal inmate in a housing cell free of suicide hazards;

d.    To summon, or transport Decedent to, necessary and appropriate emergency medical and mental health care;

e.    To refrain from unreasonably creating danger or increasing Decedent's risk of harm;

f.    To use generally accepted law enforcement procedures and tactics that are reasonable and appropriate for Decedent's status as a person in medical and mental health crisis with serious medical and mental health needs;

g.    To conduct state mandated safety and welfare checks of inmates in the custody of the COUNTY Jails;

h.    To refrain from abusing their authority granted them by law; and

i.    To refrain from violating Plaintiffs' and Decedent's rights as guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

171.    Defendants DOES 1 through 10, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiffs and decedent Joseph Posard.

172.    Defendants COUNTY and LASD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

173.    As a direct and proximate result of these Defendants' negligence, Plaintiffs and decedent Joseph Posard sustained injuries and damages, and against each and every Defendant named in this cause of action in their individual capacities are entitled to relief, including punitive damages against such individual Defendants.

## XIV.

## SEVENTH CAUSE OF ACTION

### Negligence – Medical Malpractice

### Plaintiff Estate of Joseph Posard As Against All Defendants

174.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

175.    Decedent Joseph Posard was under the care and treatment of Defendants DOES 1 through 10, all of whom were COUNTY medical staff assigned to the

COUNTY Jails, including TTCF, who were required to examine, treat, monitor, prescribe for and care for him and to provide him with medical attention when he suffered a medical emergency. These Defendants, acting within the scope and course of their employment with Defendants COUNTY and LASD, negligently, carelessly and unskillfully cared for, attended, handled, controlled; failed to monitor and follow-up; abandoned; failed to classify, failed to appropriately diagnose and/or refer decedent Joseph Posard to specialist medical care providers; negligently failed to provide physician care; negligently failed to provide psychiatry care; carelessly failed to detect, monitor, and follow-up with his condition; and negligently, carelessly and unskillfully failed to possess and exercise that degree of skill and knowledge ordinarily possessed and exercised by others in the same profession and in the same locality as Defendants for the benefit of their patient and dependent pre-trial detainee Joseph Posard.

176.   Defendant supervisors and each of them failed to supervise, train and monitor their subordinates, to maintain proper supervision, classification and staffing, to timely provide decedent Joseph Posard emergency medical and mental health care, failed to provide adequate and competent staffing, and to ensure the care and treatment ordered for decedent Joseph Posard was provided.

177.   As a direct and legal result of the aforesaid negligence and carelessness of Defendants' actions and omissions, Plaintiffs sustained injuries and damages, and against these Defendants, and each of them, are entitled to compensatory damages and as applicable to this claim for Medical Negligence, to be proven at time of trial.

178.   Defendants COUNTY and LASD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

///

///

///

**COMPLAINT FOR DAMAGES**

# XV.

## EIGHTH CAUSE OF ACTION

### Violation of California Government Code § 845.6

### Plaintiff Estate of Joseph Posard As Against All Defendants

179.   Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

180.   Defendants DOES 1 through 10 was in need of immediate medical care and treatment, and each failed to take reasonable action to summon immediate medical care and treatment. Each such individual defendant, employed by and acting within the course and scope of his/her employment with Defendants COUNTY and LASD, knowing and/or having reason to know of decedent Joseph Posard's need for immediate medical care and treatment, failed to take reasonable action to summon such care and treatment in violation of California Government Code § 845.6.

181.   In fact, it was more than evident on December 8, 9, and 10 of 2022, that Joseph Posard's situation was dire and he needed immediate medical care. Joseph Posard needed immediate care to address his suicidal condition. Instead of providing the appropriate medical care, Defendants DOES 1 through 10, and each of them, failed to take reasonable actions to summons medical care.

182.   Defendants COUNTY and LASD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

183.   As a direct and proximate result of the aforementioned acts of these Defendants, decedent Joseph Posard was injured as set forth above, and their losses entitle Plaintiff to all damages allowable under California law. Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorney fees under California law, including punitive damages against these individual Defendants.

///

# XVI.

## NINTH CAUSE OF ACTION

### Violation of California Civil Code § 52.1 (Tom Bane Act)

### Plaintiff Estate of Joseph Posard As Against All Defendants

184.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

185.   Plaintiff brings the claims in this cause of action as a survival claim permissible under California law, including Cal. Code of Civ. Proc. § 377.20 *et. seq.*

186.   By their acts, omissions, customs, and policies, Defendants, each acting in concert/conspiracy, as described above, while decedent Joseph Posard was in custody, and by threat, intimidation, and/or coercion, interfered with, attempted to interfere with, and violated Joseph Posard's rights under California Civil Code § 52.1 and under the United States Constitution and California Constitution as follows:

   a.   The right to be free from objectively unreasonable treatment and deliberate indifference to Decedent's serious medical needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments to the United States Constitution and by California Constitution, Article 1, §§ 7 and 13;

   b.   The right for the familial association to be free from government interference as secured by the Fourteenth Amendment to the United States Constitution;

   c.   The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, § 1; and

   d.   The right to emergency medical and mental health care as required by California Government Code §845.6.

187.   Defendants' violations of decedent Joseph Posard's due process rights with deliberate indifference, in and of themselves constitute violations of the Bane

**COMPLAINT FOR DAMAGES**

Act.[10] Alternatively, separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of Joseph Posard's rights as described above, Defendants violated Joseph Posard's rights by the following conduct constituting threat, intimidation, or coercion:

a.   With deliberate indifference to Decedent's serious medical and mental health needs, suffering, and risk of grave harm including death, depriving Decedent of necessary, life-saving care for his medical needs;

b.   With deliberate indifference to hazards that posed a risk to pretrial detainees, such as Decedent;

c.   Subjecting Decedent to ongoing violations of his rights to prompt care for his serious medical and mental health needs over days, causing immense and needless suffering, intimidation, coercion, and threats to his life and well-being;

d.   Deliberately contracting for and causing the provision of inadequate and incompetent medical health care to Los Angeles County jail detainees and inmates;

e.   Requiring medical and mental health staff to work outside their scope of practice, and conduct assessments, triage, and make medical and housing decisions for patients, including Decedent, they are not competent to make; and

f.   Instituting and maintaining the unconstitutional customs, policies, and practices described herein, when it was obvious that in doing so, individuals such as Decedent would be subjected to violence, threat,

---

[10] *See Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB, 2016 U.S. Dist. LEXIS 126639, at *23 (E.D. Cal. Sept. 16, 2016) (citing *M.H. v. Cty. of Alameda*, 90 F. Supp. 3d 889, 899 (N.D. Cal. 2013); *see also, Cornell v. City and County of San Francisco*, Nos. A141016, A142147, 2017 Cal. App. LEXIS 1011 at *58, f.n. 32 (Cal. Ct. App. Nov. 16, 2017) (approving M.H., supra.); *Reese v. County of Sacramento*, 888 F.3d 1030, 1043-44 (9th Cir. 2018) (following *Cornell*); *Rodriguez v. County of L.A.,* 891 F.3d 776, 799, 802 (9th Cir. 2018) (following *Cornell*).

**COMPLAINT FOR DAMAGES**

1    intimidation, coercion, and ongoing violations of rights as Decedent was

2    here.

3    188.   The threat, intimidation, and coercion described herein were not

4    necessary or inherent to Defendants' violation of decedent Joseph Posard's rights, or

5    to any legitimate and lawful jail or law enforcement activity.

6    189.   Further, all of Defendants' violations of duties and rights, and coercive

7    conduct, described herein were volitional acts; none was accidental or merely

8    negligent.

9    190.   Further, each Defendant violated decedent Joseph Posard's rights

10   reckless disregard and with the specific intent and purpose to deprive him of his

11   enjoyment of those rights and of the interests protected by those rights.

12   191.   Defendant COUNTY is vicariously liable for the violations of state law

13   and conduct of their officers, deputies, employees, and agents, including individual

14   named defendants, under California Government Code § 815.2.

15   192.   As a direct and proximate result of Defendants' violation of California

16   Civil Code § 52.1 and of decedent Joseph Posard's rights under the United States and

17   California Constitutions, Plaintiff sustained injuries and damages, and against each

18   and every Defendant is entitled to relief, including punitive damages against all

19   individual Defendants, and all damages allowed by California Civil Code §§ 52 and

20   52.1 and California law, not limited to costs attorneys' fees, and civil penalties.

## XVII.

## TENTH CAUSE OF ACTION

### Declaratory Relief

### (28 U.S.C § 2201)

### Plaintiffs As Against All Defendants

26   193.   Plaintiffs reallege and incorporate herein by reference each of the

27   preceding paragraphs of this complaint, and any subsequent paragraphs.

28   194.   There is an actual controversy between Plaintiffs and Defendants

1  concerning their respective rights and duties in that Plaintiffs contend that the acts of
2  Defendants, as described herein, are in violation of federal law, and Defendants
3  contend in all aspects to the contrary.

4      195.   Plaintiffs are entitled to a legal declaration of their rights and
5  Defendants' obligations under the applicable laws as alleged in this Complaint.

6                                    **XVIII.**
7                          **REQUEST FOR RELIEF**

8      Wherefore, Plaintiffs respectfully requests that the Court enter a judgment as
9  follows:

10     A.   Wrongful death of Joseph Posard, pursuant to Cal. Code of Civ. Proc. §
11          377.60 et. seq.;

12     B.   Loss of support and familial relationships, including loss of love,
13          companionship, comfort, affection, society, services, solace, and moral
14          support, pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

15     C.   Joseph Posard's coroner's fees, funeral and burial expenses, pursuant to
16          Cal. Code of Civ. Proc. § 377.20 et. seq.;

17     D.   Violation of Joseph Posard's constitutional rights, pursuant to Cal. Code
18          of Civ. Proc. § 377.20 et. seq. and federal civil rights law;

19     E.   Joseph Posard's loss of life, pursuant to federal civil rights law;

20     F.   Joseph Posard's conscious pain, suffering, and disfigurement, pursuant
21          to federal civil rights law;

22     G.   General Damages, including wrongful death and survival damages, in
23          excess of the mandatory amount for jurisdiction in the Unlimited
24          Superior Court;

25     H.   Non-Economic Damages, including wrongful death and survival
26          damages, according to proof plus all further and proper relief;

27     I.   Punitive damages as to individual defendants;

28     J.   Attorney's fees pursuant to State Law (Cal. Code Civ. Proc. § 1021.5 &

1    private attorney general doctrine);

2    K.    A multiplier of damages, including treble damages, under the Tom Bane

3          Act;

4    L.    Penalties under the Tom Bane Act;

5    M.    Interest; and

6    N.    All other damages, penalties, costs, interest, and attorneys' fees as

7          allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil

8          Procedure §§ 377.20 et seq., 377.60 et seq., and 1021.5; California Civil

9          Code §§ 52 et seq., 52.1; and as otherwise may be allowed by California

10         and/or federal law.

11

12   Dated: December 13, 2023          GASTÉLUM LAW, APC

13

14   By: _____

15   Denisse O. Gastélum, Esq.
     Attorneys for Plaintiffs,
16   ESTATE OF JOSEPH POSARD, by and through
     successors in interest, A.P. and E.P.; A.P., a minor,
17   by and through Guardian Ad Litem, Susan Posard;
     E.P. a minor, by and through Guardian Ad Litem,
18   Susan Posard; and ELLEN POSARD, individually

19

20   Dated: December 13, 2023          **LAW OFFICES OF CHRISTIAN CONTRERAS**
                                        **A PROFESSIONAL LAW CORPORATION**
21

22

23   By: _____

24   Christian Contreras, Esq.
     Attorneys for Plaintiffs,
25   ESTATE OF JOSEPH POSARD, by and through
     successors in interest, A.P. and E.P.; A.P., a minor,
26   by and through Guardian Ad Litem, Susan Posard;
     E.P. a minor, by and through Guardian Ad Litem,
27   Susan Posard; and ELLEN POSARD, individually

28

1

## **DEMAND FOR JURY TRIAL**

2

   Plaintiffs, ESTATE OF JOSEPH POSARD, by and through successors in

3

interest, A.P. and E.P.; A.P., a minor, by and through Guardian Ad Litem, Susan

4

Posard; E.P. a minor, by and through Guardian Ad Litem, Susan Posard; and ELLEN

5

POSARD, individually, hereby make a demand for a jury trial in this action.

6

7

Dated: December 13, 2023          GASTÉLUM LAW, APC

8

                                  By: _____
9
                                  Denisse O. Gastélum, Esq.
10
                                  Attorneys for Plaintiffs,
11                                ESTATE OF JOSEPH POSARD, by and through
                                  successors in interest, A.P. and E.P.; A.P., a minor,
12                                by and through Guardian Ad Litem, Susan Posard;
                                  E.P. a minor, by and through Guardian Ad Litem,
13                                Susan Posard; and ELLEN POSARD, individually

14

15

Dated: December 13, 2023          **LAW OFFICES OF CHRISTIAN CONTRERAS**
                                  **A PROFESSIONAL LAW CORPORATION**
16

17

                                  By: _____
18
                                  Christian Contreras, Esq.
19                                Attorneys for Plaintiffs,
                                  ESTATE OF JOSEPH POSARD, by and through
20                                successors in interest, A.P. and E.P.; A.P., a minor,
                                  by and through Guardian Ad Litem, Susan Posard;
21                                E.P. a minor, by and through Guardian Ad Litem,
22                                Susan Posard; and ELLEN POSARD, individually

23

24

25

26

27

28

**COMPLAINT FOR DAMAGES**